UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| STRICT SCRUTINY MEDIA, CO., a Nevada Corporation; INDEPENDENT ORDER OF ODD FELLOWS RENO LODGE # 14/MOUNTAIN VIEW CEMETERY, a Nevada non-profit corporation,<br><br>Plaintiffs,<br>v.<br>THE CITY OF RENO, a municipal corporation,<br><br>Defendant. | Case No. 3:16-cv-00734-MMD-WGC<br><br>ORDER |

**I.   SUMMARY**

Pending before the Court is Defendant City of Reno's Motion to Dismiss Second Amended Complaint ("MTD") (ECF No. 40) and Plaintiffs' Motion for Preliminary Injunction ("PI Motion") (ECF No. 47). The Court has reviewed the responses (ECF Nos. 42, 49) and replies (ECF Nos. 44, 50) relating to these two motions. For the following reasons, the MTD is granted in part and denied in part and the PI Motion is denied.

**II.   BACKGROUND**

**A.   Procedural History**

Strict Scrutiny Media, Co. ("SSM") filed its original complaint on December 17, 2016, against the City of Reno ("the City"). (ECF No. 1.) SSM then filed its First Amended Complaint ("FAC") on January 30, 2017, in which SSM added an additional plaintiff,

Independent Order of Odd Fellows Reno Lodge #14/Mountain View Cemetery ("Oddfellows"). (ECF No. 17.) The FAC appeared to challenge the constitutionality of two specific provisions of Reno's municipal law concerning signs: Reno's Land Development Code §§ 18.16.203 (Exempted On-Premises Permanent Signs) and 18.16.902 (Restrictions on Permanent Off-Premises Advertising Displays). The City then moved to dismiss Plaintiffs' FAC on February 13, 2017 (ECF No. 20), which this Court granted on April 18, 2017, but with leave for Plaintiff to file an amended complaint consistent with the Court's order (ECF No. 38). That order stated that the Court was "unclear on whether amendment would be futile as to Plaintiffs' First Amendment challenges to §§ 18.16.902 and 18.16.203 of the City's Land Development Code" and that it was unclear as to whether Plaintiffs may be able to allege a claim under *Central Hudson Gas & Electric Corporation v. Public Service Commission of New York*, 447 U.S. 557 (1980), as to the City's prohibition on the building of new off-premises permanent signs that display commercial speech. (ECF No. 38 at 8; *Id.* at 5 n.8.)

On April 18, 2017, Plaintiffs filed a Second Amended Complaint ("SAC"). (ECF No. 39.)

**B. Relevant Facts**

The following facts are taken from Plaintiffs' SAC. (ECF No. 39.)

SSM is a publishing company that was established to lease private property to build billboard structures, maintain those structures, advertise its own messages on structures, and sell or sublease these structures to other advertising companies at fair market value. (ECF No. 39 at ¶ 7.) SSM publishes both commercial speech as well as "all other varieties of lawful speech." (*Id.*)

SSM hired Jeff Herson[1] to secure and oversee construction of these structures in the City, specifically six leases on six parcels and four leases on a seventh parcel. (*Id.* at

---

[1] Despite the SAC's assertion that Herson is a "citizen provocateur" (*see* ECF No. 39 at 3-4), Herson is not a party to this lawsuit. *See City of Houston v. Hill*, 482 U.S. 451, 459 n.7 (1987) (finding that Hill had standing to challenge a city ordinance given his record of arrest under the ordinance and his adopted role as a citizen provocateur).

¶¶ 8-9.) One of the properties Herson secured was for property located at 1300 Stardust Street in Reno, Nevada ("Stardust Property"). (*Id.* at ¶ 10(a).) This property is owned by Oddfellows. (*Id.*) SSM is the sole owner of the billboard structure on the Stardust Property (*Id.* at ¶ 10(j).) On or about October 3, 2016, Oddfellows applied for a building permit to construct a pole style billboard with a 240 square foot face and a height of 25 feet. (*Id.* at ¶ 10(b).) The permit was issued on October 5, 2016. (*Id.* at ¶ 10(c).) Sign Crafters, a licensed general contractor, began construction of the billboard, building the footing and erecting the pole. (*Id.* at ¶ 10(d).) However, on December 8, 2016, the City issued a Stop Work Notice, stating that the reason for the notice was "violation of [Reno Municipal Code] Section or Clause: RMC 18.16." (*Id.* at ¶ 10(f).) Sign Crafters then refused to finish the project, but SSM allowed the face structure to be attached to the already erected pole and become permanent. (*Id.* at ¶¶ 10(g) & (h).) The structure has an 8 foot by 30 foot face capable of displaying messages on both side. (*Id.* at ¶ 10(i).) The billboard has the following message, "BANQUET HALL AVAILABLE" to advertise the availability of the banquet hall of Oddfellows. (*Id.* at ¶ 10(k).) SSM is not charging Oddfellows a fee to display this message, but SSM values the billboard's fair market rental rate at $6,000 per side (or $12,000 total). (*Id.* at ¶¶ 10(m) & (n).)

Herson also secured another lease on behalf of SSM at 435 Stoker Avenue in Reno, Nevada ("Stoker Property"). (*Id.* at ¶ 11(a).) Oddfellows also owns the Stoker Property. (*Id.*) Plaintiffs had not applied for a permit to build a billboard on the Stoker Property, yet Plaintiffs had a permanent monopole billboard constructed that has a face of 12 feet by 36 feet and that is 25 feet in height. (*Id.* at ¶ 11(d).) SSM is the sole owner of the billboard. (*Id.* at ¶ 11(e).) Currently, the message on the face of the structure states "MOUNTAIN VIEW CEMETERY" and advertises the location of the cemetery operated by Oddfellows which is on the same site as the sign. (*Id.* at ¶ 11(f).) SSM is not charging a fee to present this message, but the monthly fair market rental rate is supposedly $6,000. (*Id.* at ¶¶ 11(h) & (i).)

///

Herson secured a third lease on behalf of SSM that is also located at the Stoker Property. (*Id.* at ¶ 12(a).) Plaintiffs similarly did not apply for a permit to build a second structure at the Stoker Property. (*Id.* at ¶ 12(b).) The structure is a permanent monopole sign with a face that is 12 feet by 36 feet and a height of 25 feet. (*Id.* at ¶ 12(d).) SSM is the sole owner of the structure. (*Id.* at ¶ 12(e).) There has never been and is currently not a message on the face of this structure, but the monthly fair market rental rate to third parties is purportedly $6,000. (*Id.* at ¶¶ 12(f) & (g).)

Herson secured eight additional leases on various properties, but SSM has not erected any structures on these properties. (*Id.* at ¶ 13; *see also id.* at ¶ 14(d).) SSM states that it planned to build digital billboards at these properties at a supposed fair market monthly rental value of $160,000. (*Id.* at ¶¶ 14(a) & (c).)

After initiation of this lawsuit, on or about December 30, 2016, the City sent Oddfellows a Notice of Violation alleging that the sign located at the Stardust Property violated Reno Administrative Law Code § 14.16.040 and Reno Land Development Code § 18.22.201(a). (*Id.* at ¶¶ 16(a)(i) & (a)(ii).) Specifically, Oddfellows had violated § 14.16.040 because the building permit for the Stardust Property sign was issued to Sign Crafters, yet Sign Crafters was no longer a contractor as of December 8, 2016, making the building permit no longer valid. (*See id.* at ¶ 16.) The corrective action identified in the Notice of Violation was to apply for a site plan review, which was required because the sign was within 100 feet of a "freeway right-of-way."[2] (*Id.* at ¶ 16(b).) If and once the plan was approved, the Notice of Violation indicated that a licensed sign contractor would need to obtain a building permit for the sign. (*Id.*)

Similarly, on or about December 30, 2016, Oddfellows received a Notice of Violation as to one of the Stoker Property signs. (*Id.* at ¶ 17(a).) The Notice indicated that the sign was built without a valid permit and that the sign was also within 100 feet of a

---

[2]The Court refers to signs "within 100 feet of the right-of-way of a freeway that exceed 20 square feet and have faces which are visible from the travel lanes of the freeway" as "freeway signs." *See* Land Development Code § 18.16.401, *repealed by* Ord. No. 6429, § 5 (adopted April 26, 2017).

4

freeway, requiring it to go through a site plan review. (*Id.* at ¶ 17(b).) SSM also planned its future billboards, for which it has leased property, to be within 100 feet of a freeway, with faces oriented towards a freeway and visible from a freeway.[3] (*Id.* at ¶ 19(b).)

## III.    LEGAL STANDARD GOVERNING DISMISSAL

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pleaded complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Rule 8 notice pleading standard requires Plaintiff to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal quotation marks and citation omitted). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. When determining the sufficiency of a claim, "[w]e accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the non-moving party[; however, this tenet does not apply to] . . . legal conclusions . . . cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (citation and internal quotation marks omitted). Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, a district court must accept as true all

---

[3]For the first time in the SAC, SSM states that the currently constructed signs and unbuilt signs are intended to be freeway signs. As a result, Plaintiffs bring a challenge relating to the previous requirement that certain on-premises permanent signs go through a site plan review, which was repealed in April 2017, and the constitutionality of the new prohibition on freeway signs, which was enacted at the same time as the repeal. (ECF No. 39 at ¶¶ 23, 25-26.)

well-pleaded factual allegations in the complaint; however, legal conclusions are not entitled to an assumption of truth. *Iqbal*, 556 U.S. at 679. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.* at 678. Second, a district court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow a court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks omitted). When the claims in a complaint have not crossed the line from conceivable to plausible, the complaint must be dismissed. *Twombly*, 550 U.S. at 570. A complaint must contain either direct or inferential allegations concerning "all the material elements necessary to sustain recovery under *some* viable legal theory." *Id.* at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1989)).

## IV.  MOTION TO DISMISS

The City argues that Plaintiffs' SAC should be dismissed with prejudice pursuant to the law of the case doctrine and Federal Rules of Civil Procedure 8, 12(b)(6), and 41(b). The Court agrees with the City that Plaintiffs' SAC contains claims outside those permitted by the Court's prior order and added without leave of Court. After extensive time spent untangling the SAC's claims and legal bases for them, the Court finds that certain claims may go forward. *See* discussion *infra* Sec. IV(b). The Court begins its analysis by addressing Plaintiffs' standing.

### A.  Standing

The City points out that by grouping SSM and Oddfellows together for all their claims, it is unclear whether the factual allegations in the SAC support Plaintiffs' standing. (*See* ECF No. 44 at 2.) The Court agrees and finds that each Plaintiff has standing to bring only certain types of claims.

///

"Federal courts are required sua sponte to examine jurisdictional issues such as standing." *Bernhardt v. Cty. of Los Angeles*, 279 F.3d 862, 868 (9th Cir. 2002) (internal quotation marks, alteration, and citation omitted). "Article III of the Constitution limits federal-court jurisdiction to 'Cases' and 'Controversies.'" *Massachusetts v. EPA,* 549 U.S. 497, 516 (2007). "To satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC) Inc.*, 528 U.S. 167, 180-81 (2000) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). The party invoking federal jurisdiction bears the burden of establishing these elements. *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 231 (1990). Moreover, the party invoking standing must show that it has standing for each type of relief sought. *Summers v. Earth Island Inst.,* 555 U.S. 488, 493 (2009).

The Court construes the allegations in the SAC as alleging two sets of claims: those which challenge the total ban on the building of new permanent off-premises advertising displays and those which challenge the exemptions to permit requirements for certain temporary or permanent on-premises signs. Reno's Municipal Code differentiates between on-premises signs that advertise a business and off-premises advertising displays (commonly referred to as "billboards"). Reno's Municipal Code defines an "off-premises advertising display" as:

> Any arrangement of material, words, symbols or any other display erected, constructed, carved, painted, shaped or otherwise created for the purpose of advertising or promoting the commercial interests of any person, persons, firm, corporation or other entity, located in view of the general public, which is not principally sold, available or otherwise provided on the premises on which the display is located. An off-premises advertising display includes its structure.

Land Development Code § 18.24.203.4570(23). By contrast, Reno's Municipal Code defines "on-premises sign" as:

///

> Any arrangement of material, words, symbols or any other display erected, constructed, carved, painted, shaped or otherwise created for the purpose of advertising or promoting the commercial interests of any person, persons, firm, corporation or other entity, located in view of the general public, which is principally sold, available or otherwise provided on the premises on which the display is located.

Land Development Code § 18.24.203.4570(28).

Based on these definitions and the facts as alleged in the SAC, the Court can reasonably infer that Oddfellows applied for a permit to build a sign on the Stardust Property under the auspices that the sign's purpose was to advertise for their business—as an on-premises sign—yet SSM leased property from Oddfellows to build the sign and therefore owns this sign. (*See* ECF No. 39 at ¶¶ 7, 16(a); *see also id.* at 54-58 (Exh. C).) The Court is also able to reasonably infer from the allegations in the SAC that SSM now intends to lease advertising space on the Stardust Property sign, the two Stoker Property signs, and the future billboards it has leased space for to other companies, but under the current municipal code SSM is prohibited from doing so. (*See* ECF No. 39 at ¶¶ 10(j) & (o), 11(e), (c) & (j), 12(c), (d) & (h), 13, 14(e).) Thus, SSM's purported use of the currently existing and future signs are for permanent off-premises advertising displays; therefore, SSM is purportedly injured by the City's outright ban on the building of these displays. *See* Land Development Code § 18.16.902. By contrast, Oddfellows is purportedly injured insofar as it was required to acquire a permit to display any sign advertising its business on the Stardust or Stoker properties.

Therefore, the Court finds that SSM has standing to bring claims challenging the outright ban on building of new, permanent off-premises advertising displays and Oddfellows has standing to bring claims challenging exceptions to the permit requirements for on-premises signs.

### B.  Claims Permitted to Go Forward

Plaintiffs' third claim for relief includes a count the Court will permit to proceed. As stated in the SAC, this claim incorporates eight counts: violation of due process; violation of equal protection; violation of free speech and due process clauses (unbridled

discretion); violation of free speech and press (vague and prolix); violation of free speech and press (content-based law); violation of free speech and press (practical ban); violation of free speech and press and due process (vague distinction); and violation of free speech and press (*Central Hudson*). The Court finds that there are essentially three purported violations—due process, equal protection, and free speech—and that the various parentheticals raise various legal theories as opposed to distinct claims for relief under 42 U.S.C. § 1983. The Court finds that the count consistent with the Court's previous order and that may proceed alleges only First Amendment violations of free speech.

### *1.     Third Claim for Relief-Count 5*

Count 5 alleges that certain provisions of the Reno Municipal Code contain unconstitutional content- and speaker-based exemptions. As the City notes, this count includes almost four pages of case law citations and quotes (*see* ECF No. 40 at 14), making the actual claim for relief difficult for the Court to parse. However, it appears that Plaintiffs are challenging five provisions of law as being unconstitutionally content- or speaker-based: (1) the former version of Reno's Land Development Code § 18.16.203 exemption from permit or application requirements and exclusion from aggregate area computations for on-premises permanent signage of "official traffic-control sign, signals or devices, street-name signs, public utility signs, railroad signs, or signs for hospital or emergency services"; (2) special event exemptions for temporary off-premises advertising displays promoting a specified event, Land Dev. Code § 18.16.911; (3) temporary real estate sale, lease, or rental signs, Land Dev. Code § 18.16.502(2)(a)(2); (4) temporary campaign signs of a certain size that may be erected no more than 90 days prior to an election and removed within 5 days following the election, Land Dev. Code § 18.16.502(2)(a)(1); and (5) temporary garage sale signs of a certain size that may be erected no earlier than sunrise and removed by sunset on any date the sign is erected, Land Dev. Code § 18.16.502(2)(a)(3).

///

///

Because the first provision challenged is no longer in existence, it appears that Plaintiffs' claim as to section 18.16.203 is moot.[4] Moreover, while Plaintiffs seek declaratory relief for this count, their additional request for damages ensues from the recent ban on freeway signs or the prohibition on construction of new, off-premises advertising displays[5] and not from a content-based distinction related to on-premises signs. (*See* ECF No. 39 at 27 (seeking declaratory relief as well as lost revenue for the existing and unbuilt billboards, which Plaintiffs state at paragraph 19 were planned to be freeway signs).) However, the Court finds that Plaintiffs state a colorable claim regarding the four other provisions concerning temporary signs. Specifically, the challenge that temporary off-premises advertising displays for special events are allowed building permits and that certain content and speakers are exempted from certain requirements for on-premises signs. (ECF No. 39 at 21.)

Accepting the allegations in the SAC as true, SSM has sufficiently demonstrated that it owns the signs on the Stardust Property and Stoker Property and, therefore, that it has standing to challenge section 18.16.911 which allows holders of a special event permit to apply for and be granted a building permit to erect a temporary off-premises advertising display promoting the special event.[6] (*See*, *e.g.*, ECF No. 39 at 5 ("Under the

---

[4] The City points out in its MTD that "Plaintiffs fail to address the specific directive provided by [the] Court in granting Plaintiffs leave to amend their FAC to include specific allegations as to how Plaintiff SSM is impacted by the former exemption provided under Land Development Code section 18.16.203 to some businesses and further, how such exemption 'injures SSM given that it does not claim to own any property and the provision applies to on-premises permanent signs.'" (ECF No. 40 at 15 (citing ECF No. 38 at 5-6).) The Court finds that the SAC alleges sufficient facts to include a claim challenging speaker-based exceptions to the permit or application requirements of the current version of section 18.16.203, which Plaintiffs attempted to do in the SAC regarding address plates and flags. (*See* ECF No. 39 at ¶¶ 65(a) &(b).) Importantly, only Oddfellows has standing to bring this claim given that they were required to obtain a permit to place a permanent on-premises sign on their property.

[5] Only Oddfellows has standing to seek declaratory relief related to exemptions for certain on-premises signs. By contrast, damages would be granted to SSM for loss of revenue from unused billboards.

[6] It is worth noting that there are seven requirements that a special event permit holder must meet in order to obtain a building permit, none of which deal with the content of the commercial speech or the speaker. Although special events may inevitably be limited to certain types of businesses, the speakers all appear to be promoting commercial speech. Therefore, the provision on its face appears to be a content-neutral exception.

10

lease, Strict Scrutiny is the sole owner of the billboard structure").) However, it appears that SSM is highlighting this provision to challenge the total ban on building of permanent off-premises advertising displays, as both provisions concern the regulation of commercial speech and do not appear to differentiate between different types of commercial speech. In fact, by highlighting an exception to the building of new off-premises advertising displays, SSM appears to challenge the outright ban on such displays that are permanent as an unconstitutionally underinclusive restriction on commercial speech under *Central Hudson*. *See World Wide Rush, LLC v. City of Los Angeles*, 606 F.3d 676, 682-83 (9th Cir. 2010).

Plaintiffs also appeared to raise a content- or speaker-based challenge to the permitting process in their FAC (*see* ECF No. 17 at 8 ("certain speakers are exempt entirely from requirements of the Sign Code")), which manifests in the SAC as content-based challenges to the lack of permit requirements for certain temporary on-premises signs (specifically real estate, campaign, and garage sale signs). Case law also supports Oddfellows' standing to challenge these content-based restrictions on temporary on-premises signs that are exempted from certain requirements. *See G.K. Ltd. Travel v. City of Lake Oswego*, 436 F.3d 1064 (2006) (sign owner challenged particular exemptions from the permitting process based on content or viewpoint as facially unconstitutional).

Therefore, Plaintiffs' First Amendment claims that challenge (1) the ban on the construction of new, permanent off-premises advertising under *Central Hudson* and (2) the exceptions to permit and application requirements for temporary on-premises signs on the basis that they are content- or speaker-based restrictions on free speech may proceed.

*2.     Third Claim for Relief-Count 6*

In count 6, Plaintiffs challenge the City's ban on the construction of new, permanent off-premises advertising displays. (ECF No. 39 at 24.) Currently, the two signs advertising Oddfellows business are on-premises, but SSM has alleged that it intends to sell advertising space to other companies for the three signs on Oddfellows' properties,

which ostensibly would transform the signs into off-premises advertising displays. (ECF No. 39 at 5-7.) Because the City does not grant permits to build new structures for permanent off-premises signs that contain commercial speech, SSM's proposed actions are not permitted. Therefore, based on the facts as alleged the Court is able to reasonably infer a colorable First Amendment claim challenging the prohibition on construction of permanent off-site advertising displays or billboards under *Central Hudson*. However, because this count is duplicative of count 5, the Court dismisses this claim.

### *3. Third Claim for Relief-Count 7*

In count 7, Plaintiffs appear to challenge Land Development Code section 18.16.995, which permits noncommercial speech wherever commercial speech is permitted. (ECF No. 39 at ¶ 77.) Therefore, on-premises signs may include either commercial or non-commercial speech, but the building of new permanent off-premises signs that contain solely commercial speech is prohibited.

To the extent that Plaintiffs attempt to argue there is a vague distinction between non-commercial and commercial speech because an "on-site commercial billboard" may display "off-site non-commercial speech," this misuses the term billboard and misunderstands the Municipal Code's distinction between on-premises and off-premises signs. Billboards are clearly defined by the Reno Municipal Code as "off-premises advertising displays." *See* Land Development Code §§ 18.24.203.4570(9) & (23). Therefore, billboards contain only commercial speech. Moreover, an on-premises sign may contain either commercial or non-commercial speech, but to deem non-commercial speech as either "on-site" or "off-site" is a categorical mistake. The distinction between on-premises and off-premises has meaning only in the context of commercial speech to distinguish between services sold on site and those sold elsewhere. *See* Land Development Code § 18.24.203.4570(28) (stating that an on-premises sign is created to promote the commercial interests that are "principally sold, available, or otherwise provided on the premises on which the display is located"). In fact, Land Development Code section 18.16 includes two provisions detailing that non-commercial speech is

permitted wherever commercial speech is, regardless of whether the sign is considered on-premises or off-premises. §§ 18.16.850 & 18.16.995.[7]

Instead, the Court construes this claim as challenging the ban on construction of new off-premises advertising displays. Because like the Supreme Court's decision in *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 495-96 (1981), the City permits the building of new permanent on-site commercial advertising but does not permit the building of new permanent off-site commercial advertising, Plaintiffs may challenge this distinction under the parameters of *Central Hudson*. However, because this count is duplicative of count 5, the Court dismisses this claim.

### 4. Third Claim for Relief-Count 8

The Court finds that count 8, which claims that the City's "prohibition on off-site commercial speech cannot pass the test articulated in *Central Hudson*" amounts to a legal argument that falls under counts 5, 6 and 7 of Plaintiffs' SAC. Thus, SSM may proceed on a claim to challenge that ban under the framework of *Central Hudson*. However, because this count is duplicative of count 5, the Court dismisses this claim.

### C. Claims Dismissed With Prejudice

### 1. Third Claim for Relief-Count 4

In count 4, Plaintiffs appear to be challenging the entirety of Reno's Land Development Code Section 18.16 as "vague and prolix." (ECF No. 39 at 20 ("The Reno Municipal Code's prolix regulation of signs is incomprehensible to people of normal intelligence.") However, the Court finds Plaintiffs' claim itself vague. While the majority of Plaintiffs' SAC is premised on the previously existing permit process to build freeway signs and the City's subsequent ban on freeway signs, count 4 alleges that the entire section regarding the regulation of signs in Reno's Municipal Code is prolix and vague

---

[7]In addition, Plaintiffs include a paragraph entitled "requiring bureaucrats to make the commercial versus noncommercial distinction renders the ordinance unconstitutionally vague." However, City bureaucrats aren't making the distinction per se; rather, commercial speech is defined by the City as "[s]peech which proposes a commercial transaction and no more *or* expression related solely to the economic interests of the speaker and its audience." Land Development Code §18.16.850(a) (emphasis added).

while also making mention of the section's "overly complicated definitions" with "numerous cross-references to other sections of the Code." (ECF No. 39 at 20.) Thus, it is unclear to the Court how certain factual allegations in the SAC relate to specific "vague and prolix" provisions in the Reno Municipal Code's regulation on signs.

Count 4 of Plaintiffs' third claim for relief is therefore dismissed with prejudice.

### D. Claims Dismiss without Prejudice but Without Leave to Amend

For the first time in the SAC, Plaintiffs bring allegations concerning the unconstitutionality of the prior process for obtaining permits for freeway signs as well as the recent and total ban on freeway signs within the City of Reno. However, the FAC did not contain any allegations concerning freeway signs, and the Court did not give Plaintiffs leave to add allegations or claims concerning the permitting process for freeways signs or the recent ban on freeways signs that was enacted on April 26, 2017. Therefore, any claims related to these allegations are dismissed without prejudice but without leave to amend.[8]

#### *1. First Claim for Relief*

To the extent that Plaintiffs challenge the prohibition on all freeway signs within the City and ask this Court to declare that SSM's existing billboards are "grandfathered" (ECF No. 39 at 12-14), this is a new claim relating to facts occurring after initiation of this lawsuit and that do not arise from the purported claims in the FAC. Plaintiffs also state that the repeal of the site plan review requirement for freeway signs makes the basis for the City's permit denials moot (ECF No. 39 at 15); however, the repeal occurred after the initiation of this lawsuit and neither the original complaint[9] nor the FAC identify the "permit

---

[8]If Plaintiffs wish to challenge the total ban on freeway signs within the City, they may initiate a new action.

[9]The original complaint simply stated that "prior to constructing and displaying the existing signs, [SSM] sought approval from Reno to display the existing signs" and "Reno explained to [SSM] that the existing signs were not permitted under the Code, and that construction of the existing signs violated the Code." (ECF No. 1 at 3.) The original complaint only makes mention of the desire to construct a permanent on-premises sign with political speech and the ban on new off-premises advertising displays. (*Id.* at 3, 5.)

14

denials"[10] being based as failure to meet the requirements for freeway signs. Moreover, because SSM admits that the billboards it plans to build would be constructed within 100 feet of a freeway, with faces oriented towards a freeway and visible from a freeway, in violation of the new prohibition, it is asking the Court to weigh in on a claim it was not permitted to add and that arises from facts occurring after initiation of this lawsuit.

This claim is therefore dismissed.

### 2. Second Claim for Relief

Plaintiffs' second claim for relief in the SAC contends that the City is estopped from disputing that Plaintiffs are entitled to build the unbuilt billboards planned for construction within 100 feet of the freeway, with faces oriented towards a freeway and visible from a freeway. (ECF No. 39 at 15.) Beyond the fact that this is not an affirmative or legally cognizable claim for relief, it ensues from the repeal of the site plan review requirement and prohibition of all freeway signs within the City. Therefore, the claim is dismissed.

This claim is therefore dismissed.

### 3. Third Claim for Relief-Count 1

Count 1 conflates two separate issues. The first is that Oddfellows' permit was allegedly denied without due process of law and that Defendant has "arbitrarily and capriciously issued the Stop Work Notice and Notice of Violations." (ECF No. 39 at 16.) The second is that the City has refused to "grandfather" the current billboards.

It is unclear from the allegations in the SAC that Oddfellows' permit has been denied. Moreover, the SAC clearly provides the stated bases for the City's issuance of the Stop Work Notice and Notice of Violations, which pertain to challenges to the prior site plan review requirement and current ban on freeway signs. Finally, any contentions that the current billboards should be "grandfathered" relate to the repeal on freeway signs, which this Court will not address.

The Court therefore dismisses this claim.

---

[10] According to Plaintiffs, Oddfellows applied for only one permit that was in fact granted for the Stardust Property.

### 4. Third Claim for Relief-Count 2

In count 2, Plaintiffs contend that the City violated their right to equal protection by "arbitrarily, maliciously, and dishonestly" issuing the Stop Work Notice and Notice of Violations to chill Plaintiffs from building billboards "while at the same time scheming to repeal and replace the highly suspect ordinance with a prohibition . . . to deny Plaintiffs of valuable property rights." (ECF No. 39 at 16.) They also state that "hospitals, governments, and other favored speakers who use signs in Reno may use signs to speak on any subject, but Strict Scrutiny is denied that right and thereby denied equal protection of the laws." (*Id.* at 17.) The Court noted in its previous order that Plaintiffs had failed to allege sufficient facts to bring an equal protection claim and that it was "unconvinced that facts purporting content-based discrimination under the First Amendment amount to an Equal Protection Clause claim under the Fourteenth Amendment." (ECF No. 38 at 7-8.) Moreover, this claim appears to relate to the ban on freeway signs, which this Court did not give Plaintiffs leave to challenge in its previous order.

Therefore, Count 2 is dismissed.

### 5. Third Claim for Relief-Count 3

In count 3, Plaintiffs challenge the site plan review that was required for the building of freeway signs as well as the City's alternative process to build a freeway sign by obtaining a special use permit on the basis that both schemes allow for unbridled discretion. (ECF No. 39 at 17-19.) This claim again stems from facts not mentioned in the original complaint or FAC. Therefore, the Court dismisses count 3.

## V. MOTION FOR PRELIMINARY INJUNCTION

Plaintiffs move for a preliminary injunction requesting that "during the pendency of this action [the City be enjoined] from assessing ongoing fines against Strict Scrutiny[11] for purported violations of zoning ordinances by displaying signs." (ECF No. 47 at 2.)

---

[11] Despite the SAC's contention that the permit was taken out by Oddfellows on behalf of Oddfellows and SSM, it appears that Oddfellows is the party accruing fines and penalties. (ECF No. 39 at ¶ 10.b, 16; *see also* ECF No. 47-6 (permit issued to Oddfellows); ECF No. 47-9 (Notice of Violation sent to Oddfellows).) Therefore, it is not clear that SSM has standing to bring this motion.

More specifically, they argue that the Notice of Violation for the Stardust Property sign continues to accrue fines and penalties despite the Notice of Violation being based on the now repealed Reno Land Development Code § 18.16.401. (*Id.*; *See* ECF No. 47-1 at 2.) However, as noted in the previous section, Plaintiffs did not allege that section 18.16.401 was unconstitutional in its FAC and therefore were not permitted leave of court to file their SAC with allegations concerning that provision. Rather, Plaintiffs were permitted leave of court to present sufficient facts concerning claims challenging the prohibition on building new permanent off-premises advertising displays and the exemptions from the permitting process for on-premises signs in Reno's Land Development Code.

Plaintiffs also utilize an incorrect standard in their argument for a preliminary injunction, relying on the two-prong test found in *Brown v. California Department of Transportation*, 321 F.3d 1217 (9th Cir. 2003), despite the correct standard being governed by the four-factor test established in *Winters v. Natural Resources Defense Council, Inc.*, 55 U.S. 7 (2008), or the alternative "sliding scale" approach utilized in the Ninth Circuit. *See All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011) (an injunction may issue under the "sliding scale" approach if there are serious questions going to the merits and the balance of hardships tips sharply in the plaintiff's favor, although the plaintiff must still show a likelihood of irreparable injury and that an injunction is in the public interest).[12] Moreover, the PI Motion's section regarding likelihood of success on the merits—which is a factor in both *Brown* and *Winters*—does not address the merits of any of the claims in the SAC. Rather, the PI Motion is based on arguments concerning the constitutionality of penalties accruing during a First Amendment challenge and the purported revocation of Oddfellows' permit. (ECF No. 47-1 at 7-14.) To the extent Plaintiffs' likelihood of success on the merits argument may be based on their contention

---

[12]If Plaintiffs choose to file another motion for preliminary injunction, they need to utilize the correct legal standard and make clear upon which claim they base their argument for likelihood of success on the merits. It is not for the Court to sift through Plaintiffs' claims to determine which claims serve as the basis of any request for preliminary injunctive relief. Accordingly, failure to properly present arguments under the correct legal standard will result in summary denial of another motion for preliminary injunction.

that the City cannot enforce now repealed section 18.16.401 against them (ECF No. 50 at 3 ("Strict Scrutiny has established a likelihood of success on the merits that the citations and accruing fines are improper")), this claim appears to stem from the first count of the SAC's third claim for relief (*see* ECF No. 50 at 7-8), which was not permitted by the Court's prior order granting leave to amend and which this Court has dismissed in this order without leave to amend.

For these reasons, the PI Motion is denied.

## VI. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the parties Motion.

It is therefore ordered that Defendant City of Reno's Motion to Dismiss (ECF No. 40) is granted in part and denied in part. The Motion is denied with respect to count 5 in the third claim for relief and is granted as to the remaining claims. SSM's claim challenging the constitutionality of the ban on construction of new, permanent off-premises advertising displays (third claim for relief, count 5), *see* Land Development Code § 18.16.902, and Oddfellows' claim challenging the constitutionality of exceptions to the Municipal Code's requirements for on-premises signs (third claim for relief, count 5), *see* Land Development Code §§ 18.16.203 and 18.16.502, are permitted to proceed.

It is further ordered that Plaintiffs' Motion for Preliminary Injunction (ECF No. 47) is denied without prejudice.

DATED THIS 15th day of November 2017.

MIRANDA M. DU  
UNITED STATES DISTRICT JUDGE